UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

RONALD SALOMON,

                PLAINTIFF,

    v.

BOARD OF IMMIGRATION APPEALS, and

MERRICK GARLAND, in his official capacity

as United States Attorney General

                DEFENDANTS

_____X

**24 CV 885**

_____CV_____(  )

**PLAINTIFF'S BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE
FOR PRELIMINARY INJUNCTION AND STAY PENDING REVIEW**

       I, Ronald Salomon, as Plaintiff, appearing *pro se*, respectfully moves this

Court for a preliminary injunction preventing and precluding Defendants

from implementing and enforcing a January 12, 2024, decision, and order

(hereinafter "BIA Decision") suspending me from practice before the Immigration

Courts, the Board of Immigration Appeals, and DHS for a period of six (6) months,

effective 15 days from the date of the decision. Plaintiff further moves for a stay

of the BIA Decision pending review pursuant to 5 U.S.C. § 705. The BIA Decision

is annexed hereto as **Exhibit A.** The underlying decision of the Adjudicative

Official ("AO Decision") who initially issued suspension, which the BIA affirmed, is annexed hereto as **Exhibit B.**

## I. Introduction

Plaintiff Ronald Salomon moves the Court to enter a preliminary injunction upon Defendants to enjoin them from implementing and enforcing a January 12, 2024 decision and order (hereinafter "BIA Decision") suspending from practice before the Immigration Courts, the Board of Immigration Appeals, and Department of Homeland Security for a period of six (6) months, effective 15 days from the date of the decision. I further, respectfully, move this Court to issue a stay of the BIA Decision pursuant to 5 U.S.C. § 705, postponing the effective date of the BIA Decision pending judicial review of that decision under 5 U.S.C. § 706(2)(A) and (E).

These measures are justified in order to prevent irreparable injury to the Plaintiff, who would otherwise be required to serve his six (6) month suspension before judicial review of the BIA Decision could be completed. Once I serve the suspension, no relief which the Court could grant would restore the days I am unable to practice immigration law. The Court should not allow my meritorious challenge to the BIA Decision to be rendered largely moot in this way.

## II. Factual Basis

On September 21, 2018. I appeared in Immigration court for a master calendar hearing before Judge Lurye. The court was in progress and many people were in court that day. I went through the gate to check in for my case while the Judge was in the middle of conducting the master calendar hearing. Ms. Adrienne, the Judge's clerk, was seated at her table and was looking down at an open file. I waited patiently until she was ready to acknowledge me, and I then told her I was there to check in. She was extremely nervous and frazzled and appeared overwhelmed. She told me to "hold on" because she was working on 3 things at once and cannot do everything. She handed me a clipboard with a sign in sheet (which was not used previously in Judge Lurye's court). I filled out the sheet, providing my name, case number and name of the case. The judge had then given instructions to Ms. Adrienne to prepare something for the case which she had just finished. After I filled out the information for my case on the sheet, I was still holding the clipboard and was also ready to hand it back to Ms. Adrienne with my E-28 (Notice of Appearance form) which was already filled out. She completely ignored me, refused to acknowledge my presence, and did not bother to look at me, but I waited patiently by her table. She said she was still busy when I attempted to hand the clipboard back to her and she said I should drop it in the cart. I was holding the E-28 form the entire time and was attempting to hand it to her. Again,

she completely ignored me, and I continued to wait with the E-28 outstretched towards Ms. Adrienne. Again, she failed to look at me.

As I waited, I looked towards the assistant chief counsel, Kalenna Lee[1] and she saw me standing there with the E 28 outstretched while trying to submit it, Lee shrugged her shoulders, as if to communicate that she was perplexed and did not understand Ms. Adrienne's reluctance to take my form. I then tried to get Ms. Adrienne's attention and I finally asked after several minutes, "what about my notice of appearance?", I heard her say to me, "just give it in later". Ms. Adrienne appeared rude and acted unprofessionally. She prepared a post-it note for the judge and placed it on the file for the judge to take my E-28 when my case will be called.

I then left the courtroom to attend to my other cases that day. When I returned the court was still in session. Before I could sit down, and in front of the entire court, the Judge called out for me to come forward and approach the bench. The Judge stated in open court, "Mr. Salomon, I heard you are being uncooperative and that you refused to submit an E-28". I was appalled, stunned, perplexed and understandably humiliated in public without just cause  I attempted to explain what transpired earlier, but the Judge did not want to hear any explanations and said I

---

[1] Kalenna Lee is currently an Immigration Judge

should just hand in my form and take a seat. I did not say anything, and I went to sit next to my client.

After a while, the judge took a recess and I then went up to Ms. Adrienne, who was sitting at her table, to voice my displeasure about her need to "report" me to the judge that I had been uncooperative and refused to comply with the "clerk's rules." I was curious about her motivation and wanted to express my opinion that I thought she targeted me because I was a white Jewish lawyer. I told her it was not right to embarrass me in public and that it was not the first time that she informed the Judge about me for issues that were completely insignificant. I asked her if she was racist or an Anti-Semite. Ms. Adrienne just got up and left the court though the side entrance to the back. The court resumed the calendar after the recess.    My case was later called, and I appeared before the Judge without incident. Another clerk replaced Ms. Adrienne and took over her duties in court.

Thereafter, Ms. Adrienne submitted a complaint with EOIR through an affidavit (Exhibit C). Her statement brief lacks details about what transpired in the courtroom. Judge Maria Lurye, who was the presiding judge in court, filed an affidavit (Exhibit D), Kalenna Lee prepared an affidavit (Exhibit E), and Carolina Hernandez, who replaced Ms. Adrienne in court, also filed and affidavit (Exhibit F).

The government then brought a charge against me under 8 CFR § 1003.102(g):

> Engaging in contumelious or otherwise obnoxious conduct
> with regard to a case in which he or she is acting in a
> representative capacity, which would constitute contempt in a
> judicial proceeding.

After replying to the charge, the BIA ordered the case be referred to an Adjudicating Official ("AO") for factual findings and legal determinations. A hearing was then held on May 20, 2021. The complainant, Ms. Adrienne, who alleges to be the aggrieved party, failed to appear at the hearing and was unavailable to provide testimony nor was she available for cross-examination. Although the other government employees who submitted affidavits were present and testified in court, only one individual, Kalenna Lee, was in the courtroom during the charged incident. The AO then issued a decision sustaining the charge and imposed a six (6) month suspension.

An appeal of that decision was filed with the BIA. A final decision by the BIA that dismissed the appeal was issued on January 12, 2024, which was posted on the EOIR

website and effective on January 27, 2024. The BIA decision upheld the six (6) month suspension.

## III. Argument

Pursuant to 5 U.S.C. § 705, when review of an administrative decision is sought under the Administrative Procedure Act ("APA"),

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court... may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

> 5 U.S.C. § 705.

Here, the appropriate process is a preliminary injunction or emergency stay and then a more durable stay of the suspension, to "postpone the effective date" of the BIA Decision "pending conclusion of the review proceedings." *Id.*

The ordinary standard for issuance of a stay of an agency decision pending review considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably

injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken* v. *Holder,* 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).

## A. Likelihood to Succeed on the Merits on the APA Claim.

First, the facts do not support a finding that the charge cannot be sustained based upon the conduct in this case. The facts, as set forth herein, occurred during a recess break of 20 minutes, did not interrupt court proceedings, and consisted of 3 statements wherein I voiced my displeasure with the manner in which I was treated. The 3 statements were, (a) why did you report me to the judge; (b) it was not the first time that you made disparaging reports to the same judge; and (c) if she was a racist or antisemite.

There were no threats of harm, abuse, or violence and no foul or vulgar language uttered. These were statements that were only made in a raised voice. Which was a result of my subjective belief and state of mind based on my prior interactions with the same clerk.

## 1. The Punishment is Overly Excessive and not Commensurate with the Statements and Conduct

Even in it is found that the statements are found to be in violation of the charge and punishable, the sanctions imposed are overly excessive according to the controlling case law on disciplinary matters within the State of New York. Both the AO and the BIA rendered decisions on the facts where the record was not complete resulting in sanctions that are arbitrary and capricious.

The BIA cited 3 New York cases that impose punishment for statements and conduct that was much more abusive, egregious, and serious in nature. Furthermore, the actions in these cases occurred during court proceedings to either the judge and/or adversaries. These cases imposed far lesser sanctions than the period that was imposed in my case. One of those matters cited by the BIA merely imposed a public censure. (BIA Decision at Exhibit A, p. 11).

The following cases are from the New York jurisdiction, and cited in my brief to the BIA, should have given guidance to the BIA as to actions and statements made by attorneys in open court towards judges and their adversaries and the penalties that were imposed.

a) Matter *of John* Lo Pinto, 19 A.D. 2d 180, NY Appellate Div., (3rd Dept. 1963) – The attorney was found guilty of professional misconduct consisting (1) of acts of marked and repeated disrespect to the Ithaca City Court in *yelling and shouting at the Presiding Judge* in the course of a noisy quarrel with the Judge and an Assistant District Attorney upon an application for bail, (2) of acts of abuse and vilification of the same prosecutor.....respondent falsely accusing him of gambling, applying to him both offensive and derisive epithets and *threatening or suggesting physical attack* upon him; and (3) of abusive acts in the Cortland City Court in calling the city prosecutor a liar and exhibiting contempt for his youth and inexperience....and these on the part of a mature and skillful lawyer and without any provocation or justification whatsoever." (emphasis added). The court went on to say that even though the attorney gave assurances, "he was then accused in rather *frequently abusing and vilifying other lawyers* with whom he engaged in litigation and, indeed, in *threatening and inflicting physical violence* upon some of them. In assessing punishment, the court gave consideration that the respondent made substantial progress in "curbing these indefensible tendencies" and that "no dereliction has been shown during the three years that have elapsed since the incidents here complained of". The respondent was censured in this case. (emphasis added).

b) *Matter of Jordan Schif,* 190 A.D. 2d 293, NY Appellate Div., (1st Dept. 1993).

"While representing a plaintiff at a deposition in a personal injury action, respondent was *unduly intimidating and abusive toward the defendant's counsel,* and he directed *vulgar, obscene and sexist epithets* toward her anatomy and gender." The court imposed a public censure.

c) *Matter* of *Milton* S. *Herman,* 37 A.D. 2d 315, NY Appellate Div (2nd Dept. 1971).

"The charges against respondent arose out of his courtroom conduct on two separate occasions and before two different judges. The petition alleges that the respondent, while appearing

for the plaintiff in the trial of a civil action, "engaged in disorderly, contemptuous and insolent conduct, committed during the sitting of the Court, in the immediate view and presence of the Justice and the jury, and said conduct evincing a disregard and disrespect for the Court and the Justice before whom he appeared and directly tending to disrupt the order and decorum of the Court", and that he engaged in similar conduct while appearing for the defendant in the trial of a criminal action." The respondent answered in an affidavit that there "was no justification for the *outbursts* made by me." (emphasis added). The court held there that censure was an appropriate measure.

d) *Matter of Simon*, 20 A.D. 2d 46, NY Appellate Div. (4th Dept. 1963). "The conduct complained of consists in the main of statements made by the respondent in the course of arguments of motions during appearances before Trial Justices in the Third Judicial Department and in the Appellate Division of that Department. Many of the statements were unseemly, intemperate and at time appeared to be malicious." "It would appear from the record that they were not necessarily impulsive, but that, at least in some instances, they had been planned in advance." The case goes on to provide the assessment that the Supreme Court Justice who heard this case made regarding the facts of this case. "He had indicated that his findings show a complete disrespect for the courts, a lack of responsibility of the respondent's obligations as an attorney, and that the respondent is guilty of tending to bring the profession into disrepute." The Court concluded that "we are inclined to believe that censure is sufficient at this time."

e) *Matter* of *Hayes*, 7 A.D. 3d 108, NY Appellate Div. (1st Dept. 2004). The respondent here was charged with engaging in undignified or discourteous conduct before a tribunal and for his disrespectful behavior before a judge. "After receiving an unfavorable ruling, the respondent accused the court and its clerk of prejudice and racism, and made other insolent, disrespectful remarks." Even though there was an admonition for similar conduct, the Court imposed a public censure, being mindful that a suspension would end his career as an attorney.

f) *Matter* of *Kavanagh*, 189 A.D. 2d 521, NY Appellate Div. (1st Dept. 1993). The respondent was charged with "making insulting and unsupported allegations in court papers that his imposing counsel in a breach of contract action had ties to organized crime." The Court concluded, "These remarks clearly constituted insulting slurs of the most fundamental sort and were clearly degrading to the court to which they were presented in the guise of proper argument. Moreover, we agree with the Committee that the complete lack of justification for the remarks creates the strong implication that they were motivated in substantial part by ethnic bias which appears to have interfered with respondent's judgment sufficiently as to reflect on his fitness to practice law...".The court held that the respondent should be publicly censured.

g) *Matter* of *Kunstler*, 194 A.D. 3d 233, NY Appellate Div. (1st Dept 1993).- The attorney was held to be in contempt for calling the judge partisan and "a disgrace to the bench". The attorney was publicly censured, eventhough the respondent was convicted of a "serious crime"" and despite "prior instances of contumacious conduct, dating back more than 20 years, on the part of the respondent.."

h) *Matter* of Delio, 290 A.D. 2d 6, NY Appellate Div. (1st Dept 2001)- Here the respondent questioned the court's default judgment and filed disparaging and insulting remarks upon the court in a motion to have the case restored. The court sustained the charge and found "that respondent engaged in conduct that was prejudicial to the administration of justice.challenged the authority of the court; engaged in undignified and discourteous conduct which was degrading to a tribunal.; and engaged in conduct which adversely reflected on his fitness to practice law." The court found that the facts and conclusions of the Committee were confirmed and that the respondent was publicly censured.

i) In re *Erdmann*, 33 NY 2d 559 (1973)- The attorney who criticized trial judges in a magazine article for not following the law and appellate judges for being"the whores who became madams.". The court reversed sanctions against the attorney..

The following case is from the US Supreme Court:

n) *In re Snyder,* 472 U.S. 634 (1985)- Although the Court of Appeals imposed sanctions upon the attorney in this matter, citing that the petitioner's statements were disrespectful and constituted contumacious conduct rendering him not fit to practice law in the federal courts, the U.S. Supreme Court held that the petitioner's conduct and expressions did not warrant his suspension from practice. The trial judge in the case also commented in an affidavit, "... Mr. Snyder has appeared before me on a number of occasions, and has always competently represented his client, and has shown the highest respect to the court system and to me."

Justice Burger wrote for the Court, "All persons in the judicial process- judges, litigants, witnesses, and court officers--owe a duty of courtesy to all other participants. The necessity of civility in the inherently contentious setting of the adversary process suggests that all members of the bar cast criticisms of the system in a professional civil tone. However, even assuming that the letter exhibited an unlawyerlike rudeness, a single incident of rudeness or lack of professional courtesy in this context does not support a finding of contemptuous or contumacious conduct, or a finding that a lawyer is "not presently fit to practice law in the federal courts.." Nor does it rise to the level of conduct unbecoming a member of the bar" warranting suspension from practice."

Every case cited herein involves an incident with a judge or during court proceedings, where a lawyer either screamed or yelled, made rude, insulting, degrading, demeaning and disparaging remarks, comments and statements directed toward the judge, an adversary, questioned the integrity of the court, unfairness of the court proceeding or outcome. The content of my one comment in the courtroom,

which was during a break, did not rise to that level. I did not yell, scream, make threats, disrupt, have an outburst, or intimidate anyone in the middle or during a court proceeding. The record shows that I returned silently to the gallery and waited patiently for my case to be called. While I waited, the court took a 20-minute recess break and then I approached the clerk.

As confirmed by the presiding judge, Judge Lurye, in her affidavit, she states that the incident occurred during a break and we spoke in the hallway outside the court about the incident, and when court was about to resume, she further states, "At this point, I asked him to go back to the courtroom and sit down and wait quietly, which he did. (Exhibit C, paragraphs 4).

In my 30 years of practicing and appearing in thousands of hearings before the immigration court, I have never had one instance where I was deemed to contumelious or obnoxious or disrupting a court proceeding. The facts in this matter, clearly establish that the court proceedings were not disrupted while the court was in session.

Next, the BIA erroneously concluded that my conduct seriously disrupted or interfered with the court hearing based only that the immigration judge briefly intervened and that another clerk had to replace Ms. Adrienne. The duration of the

entire incident lasted a few minutes, during the recess break. The court then resumed

normally thereafter. Affidavit of Judge Lurye (Exhibit D).

The presiding judge, Judge Lurye, who presided over the calendar that day, never

expressed any concern that day that the incident disrupted her court proceedings in

any manner. Yet the AO and BIA concluded that the court proceedings were

disrupted. This is despite the fact that the presiding judge did not have any concerns

on this issue and did not address this in her affidavit (Exhibit C).

The sanction of six (6) moths is overly excessive and not commensurate with

the conduct that took place. The conduct is not comparable to the excessive nature

and severity of the conduct of the cases cited herein that are within the New York

jurisdiction. Moreover, the AO found that an incident with the Memphis

Immigration in 2016 justified this lengthy suspension, even though the conduct was

based on a telephone conversation, whereby I was inquiring about the status of a

pending motion with the court. The clerk with whom I spoke claimed I was rude on

the phone. No hearing was held in the matter, and it was determined by the EOIR

disciplinary counsel that I was in violation of court rules. In mitigation, I testified

that I traveled on a case to Memphis after the 2016 incident had been concluded and

completed, and that I personally went over to the clerk, Ms. Golston, to express my

apologies. Although I was not obligated to do so, I felt it was a courteous gesture to

tell her I didn't intend any harm. Instead, the AO used my apology as a negative

factor because it took place after she filed a complaint. My actions were purely voluntary and there was no obligation to do so. I believe that a sincere expression of apology should not be used as a negative factor to exact excessive punishment and sanctions.

## 2.  Deprivation of Due Process

The Immigration Judge was clearly in error and violated my rights to a fair hearing and due process by proceeding with the hearing without the complaining witness. The Judge, in violation of the law, did not believe this significant right was an important factor. The government failed to produce the complainant as a witness at the hearing, thus depriving me of a fair and complete hearing. The complainant, Ms. Adrienne, a clerk at the immigration court, refused to appear at the hearing to testify and be available for cross-examination. She also failed to explain the reason for her non-appearance and her unwillingness to testify or get involved in the process, even though she initiated the complaint and alleged that she was harmed. Ms. Adrienne never appeared on the day of the hearing. Government counsel alleged that he attempted to make her available but was unable to do so. The absence of a key witness, who alleges to be the aggrieved party, is a clear sign that the hearing was deficient on its face. Therefore, the court, in conducting the hearing

without her testimony, relied solely on hearsay, speculation and implied and speculative facts. On this basis alone, the hearing should not have been held and the matter should have been dismissed.

The Supreme Court, in a seminal case arising from the New York Courts, has established that in disciplinary proceedings, the witnesses **must be available to testify** at the hearing for the case to proceed and to afford the respondent's rights to due process afforded under the US Constitution. In *Willner v. Committee on Character and Fitness, Appellate Division of the Supreme Court* of *New York, First Judicial Department*, 373 US 96 (1963) the Court stated, "[t]he requirements of procedural due process must be met before a State can exclude a person from practicing law. "A State cannot exclude a person from practicing law or from any other occupation in a manner or for reasons that contravene the Due Process of Equal protection Clause of the Fourteenth Amendment." *Schware v. Board of Bar Examiners*, 353 US 232 238-239. *Willner* at 102 (emphasis added).

The Court further held, "We have established in recent years that procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood. See, *Greene v. McElroy*, 360 US 474, 492, 496-497. That view has been taken by several state courts when it comes to procedural due process and the admission to practice law. *Coleman v. Watts*, 81 So, 2d 650;

*Application of Burke,* 87 Ariz. 336, 351 P.2d 169; *In re Crum,* 103 Ore 296, 204 P.948; *Moity v. Louisisana State Bar Assn.,* 239 La. 1081, 121 So. 2d 87. Cf. *Brooks v. Laws,* 208 F.2d 18,33 (concurring opinion). We think the need for confrontation is a necessary conclusion from the requirements of procedural due process in a situation such as this. Cf. *Greene v. McElroy,* supra; *Cafeteria Workers* v. *McElroy* 367 US 886." *Willner* at 103-104

The Supreme Court has thus emphasized the necessity for confrontation of the witnesses in order to comply with the laws set forth in the U.S. Constitution. The Court emphasizes that this is a necessity in situations involving the deprivation of livelihood and the ability to practice law.

Nevertheless, the AO overlooked the importance of having the witness, Adrienne, present to testify and *contrary* to *the law* ruled, that it was not important or necessary for her to appear. Failing to produce this key and vital witness warrants that the charge and the entire case should be dismissed. The Supreme Court has also held that state grievance cases are quasi-criminal that require due process considerations and confrontation of witnesses. *Matter of Ruffalo,* 390 US 544 (1968).

Both the AO and BIA (Exhibit A, p. 4) held that the Federal Rules of Evidence do not apply in these proceedings since it is before the Immigration Court. Despite the AO and BIA assertion, the Fifth Amendment's Due Process Clause applies to all persons within the United States, including aliens[2], and requires that aliens be given a reasonable opportunity to confront and cross-examine witnesses.

*Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 681 (9th Cir. 2005) (citing *Zadvydas* v. *Davis*, 533 U.S. 678, 693 (2001)).

According to the Fifth Amendment, it must be shown that:

> **(1)** the absence of live testimony rendered the proceeding "so fundamentally unfair that the alien was prevented *from* reasonably presenting his case" *Platero*-Cortez v. *INS,* 804 F.2d 1127, 1132 (9th Cir.1986); and
>
> **(2)** he was prejudiced, which means that the outcome of the proceeding may have been affected *by* the alleged violation. See *Campos*-*Sanchez* v. *INS,* 164 F.3d 448, 450

---

[2] Since the AO and BIA are treating disciplinary proceedings in the same manner as removal proceedings, the same rules should apply in this case.

(9th Cir. 1999); *Hartooni v. INS*, 21 F.3d at 336, 340 (9th
Cir. 1994).

Under the INA, 8 U.S.C. § 1229a(b)(4)(B); INA § 240(b)(4)(B) -

"[T]he alien shall have a reasonable opportunity...to cross
-examine witnesses presented by the Government..."

Also, 8 C.F.R. § 1240.10(a)(4) states:

> "In  a  removal  proceeding,  the  immigration  judge
> shall...[a]dvise the respondent that he or she will have a
> reasonable   opportunity   to...cross-examine   witnesses
> presented by the government..."

The Ninth Circuit has held that these statutory guarantees cannot be fulfilled
"if the government's choice whether to produce a witness...is wholly unfettered."
*Baliza* v. *INS,* 709 F.2d 1231, 1234 (9th Cir. 1983). In an opinion from 1988, the
Ninth Circuit stated that "the government must make a reasonable effort in INS
proceedings to afford the alien a reasonable opportunity to confront the witnesses
against him or her." *Cunanan* v. *INS*, 856 F.2d 1373, 1375 (9th Cir. 1988).

The Government is further obligated to provide the alien an opportunity for cross examination of its witnesses regardless of the fact that the burden is on the alien to demonstrate eligibility for relief. *Cunanan*, at 1375.

Based upon the laws cited above, both the AO and BIA committed judicial error. In the absence of the complainant and key witness, the AO instead, relied solely on hearsay and circumstantial testimony to make factual findings. There was no testimony of the complaining witness and no opportunity for cross-examination and therefore, violated my 5th amendment right to due process.

In this case, the government presented three witnesses, *none* of whom possessed complete or accurate knowledge of the alleged incident that is the subject of this hearing. Two of the witnesses, Judge Lurye and Carolina Hernandez, were not present when the utterance was made and never witnessed the alleged incident and merely provided testimony as to what they *perceived* to have taken place either before or after the alleged incident. They have no knowledge of the content of what was said, the manner in which it was made or my demeanor. The third witness, Kalenna Lee, was present in the courtroom the entire time, but she did not "see" or "hear" what was said leading up to the incident and what transpired to be an accurate witness. She testified that she was looking at her computer most of the time and was not paying attention. None of these individuals can be a replacement or

"stand-in" for Ms. Adrienne, who claims to be the aggrieved victim. Without Adrienne's testimony, both for direct and cross-examination, the hearing is merely a piecemeal and patchwork hearing with parts of different individuals' testimony being woven together for the presentation of the government's case. It is a clear violation of the Fifth Amendment as applied in an immigration proceeding.

### 3.    Claim of Anti-Semitism

The reason I expressed my displeasure with being singled out and targeted by Ms. Adrienne, was due to my reasonable belief that she was an Anti-Semite. This claim was summarily dismissed by the AO and BIA because the government witness refused testimony in court and clarification, thus there was no objective evidence in the record. Although the AO discusses a prior incident involving myself and the same clerk, whereby another Jewish lawyer was accused of wrongdoing, he stated that "there could be a myriad of other explanations other than anti-semitism" (Exhibit B, p.18).

The BIA went one step further and states that there was no proof of any other prior incident involving Ms. Adrienne. (Exhibit A, p. 6, footnote 4). The reason that there is no evidence other than my testimony in court is because the witness failed to appear in court and refused to testify. She actually did confirm that an incident

22

occurred in her affidavit, (Exhibit C, paragraph 15), but she declined to elaborate as to what transpired. That testimony of the witness would have explained and provided a basis as to why I had a valid belief that the clerk was Anti-semitic and had singled me out in court. Because she did not appear to testify, both the AO and BIA merely stated that they were unsure of the nature of that incident. This is clearly judicial error in violating my rights to have the witness present, in addition for the court to make a decision on an incomplete record of issues that were raised.

The prior incident which took place in the summer of 2018 precipitated my belief that the clerk was an antisemite. Although I provided specific details of what transpired, the AO and BIA claim that the incident never took place. Instead of accepting my sworn testimony, whereby there was no contradictory evidence or rebuttal, they claim that nothing took place, and the incident cannot be confirmed.

Although the clerk, Ms. Adrienne, alluded to the incident, the AO abused his discretion in disputing the facts and allegations because the witness was not present in court to either confirm or deny what took place. The basis of the incident when I approached the clerk on September 21, 2018, was on account of the cumulative acts of the clerk on *both* incidents. When I expressed my displeasure, my statements were (1) why did you report me to the judge? (2) this was not the first time; and (3)

are you a racist or anti-semite? Since I had never countered that type of treatment in the 30 years of practice before the court, it was my reasonable and justifiable belief that the clerk had a religious bias against me.

That belief is real and a serious problem in society within the United States and throughout the world, as anti-semitic acts of violence and bias are prevalent and rampant. As an orthodox Jew, who wears a yarmulke at all times, the idea that an individual has bias or animosity against Jews is not a misguided nor an unfounded view.

## B. I Will Suffer Immediate and Irreparable Harm Absent a Stay

As outlined in the Affirmation to the Order to Show Cause, I will suffer greatly if the suspension from the practice of law were implemented. I am a sole practitioner, maintaining a law practice for over 30 years and I appear at every hearing personally, representing immigrants in their asylum hearings before the Immigration Court. Over the next upcoming six (6) months, I have over 300 court appearances scheduled. I have daily commitments to conduct hearings for those predominantly from West Africa who have experienced past persecution from civil war, Female Genital Mutilation, political upheaval, and religious persecution from Extremists, coming to the United States and seeking protection in this country for fear of returning to their native countries. This area of law involves humanitarian assistance

and human rights protection to immigrants who have no other country where they can live safely. I have helped thousands of immigrants gain asylum and I have been successful in two precedent cases which have paved the way for other practitioners to achieve success for their clients[3].

I am the only attorney in my office who is licensed to practice law. There is one newly hired associate who is a recent law school graduate and has not yet taken the Bar exam. Many of the clients have waited several years to have their cases heard. The six (6) month suspension would only further delay their cases. Many new migrants have also entered the United States and most of those cases are on an expedited track by the court in order to alleviate any backlog and to complete the case in the quickest manner possible.

An immediate suspension would take away my livelihood, with no other source of income or revenue. I will still be responsible to maintain my office lease and pay any expenses incurred therefrom, including utilities and equipment lease. This financial burden will still exist despite not having any income or revenue for an extended period. Moreover, I will not be able to afford the salaries of 5 employees

---

[3] Bah v. Mukasey, 529 F.3d. 99 (2d Cir. 2008) and Sall v. Gonzales, 437 F.3d 229 (2d Cir. 2006)

on the payroll due to the closing of my practice. These individuals will be without

any source of income during the suspension period.

**C.  Issuance of the Stay Will Not Substantially Injure Other Parties to the Proceeding**

If the Court ultimately determines that it is legally appropriate for this sanction

to be imposed on Plaintiff based on conduct that occurred in 2018, postponing the

effective date of the sanction will not materially lessen its punitive effect. There will

therefore be no substantial injury to other parties from the issuance of the requested

stay.

**D.  The Public Interest Supports a Stay**

Granting a stay serves the public interest because it enables me to continue to

serve my clients, without interruption, if the suspension is determined to have been

legally unjustifiable. It is again significant in this context that the imposed

suspension was not based on any allegation that my representation of any client was

incompetent or otherwise harmful to that client. Allowing the suspension to proceed

thus punishes not only myself, but the clients who rely on my services. If the

suspension were to be found legally justified, that might be a regrettable necessity,

but if the suspension is not upheld on review, a stay will allow this harm to my

clients to have been avoided. For all these reasons, the public interest factor, like

the other factors, favors the grant of a stay postponing the effective date of the BIA

Decision pending the conclusion of these review proceedings.


## IV. Conclusion

For the foregoing reasons, we respectfully request that the Court issue a

preliminary injunction of my suspension pursuant to the BIA Decision, and a

stay of the BIA order pending the conclusion of the judicial review proceedings

in this matter.


Dated: This the 6th day of February 2024.

_Ronald Salomon_

305 Broadway, Suite 1102

New York, NY 10007

212-791-0890

Ronsalomon412@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
_____CV._____(        )

RONALD SALOMON,
                    PLAINTIFF,

        v.
                                                    **AFFIRMATION**

BOARD OF IMMIGRATION APPEALS,


MERRICK GARLAND, in his official capacity
as United States Attorney General; and

                DEFENDANTS.
_____X

STATE OF NEW YORK
COUNTY OF NEW YORK SS:

Ronald Salomon, hereby makes the following affirmation under the penalties of

perjury:

I, Ronald Salomon, as plaintiff in the above-entitled action, respectfully moves this

court to order the defendants to show cause why they should not be enjoined from

implementing and enforcing January 12, 2024[1] (hereinafter "BIA Decision")

suspending him from practice before the Immigration Courts, Board of Immigration

Appeals, and DHS for a period of six (6) months, effective 15 days from the date of

---

[1] The BIA decision was never served on me. Instead, it was posted on the EOIR website on January 27, 2024.

the decision. Plaintiff further moves for a stay of the BIA Decision pending review pursuant to 5 U.S.C. § 705. The BIA Decision is annexed hereto as <u>Exhibit A</u> to the accompanying Declaration. The underlying decision of the Adjudicative Official ("AO Decision") who initially suspended the plaintiff, which the BIA affirmed, is annexed hereto as <u>Exhibit B</u>.

I.    Introduction

Plaintiff, Ronald Salomon, moves the Court to enter preliminary injunction restraining Defendants from implementing a January 12, 2024, decision and order (hereinafter "BIA Decision") suspending him from practice before the Immigration Courts, the Board of Immigration Appeals, and Department of Homeland Security for a period of six (6) months, effective 15 days from the date of the decision. Plaintiff further moves the Court for a stay of BIA Decision pending judicial review of that decision under 5 U.S.C. § 706(2)(A) and (E).

Unless this order is issued, I will suffer irreparable harm. The harm will not only affect me personally, but as a sole practitioner, also to the many clients I represent in removal proceeding before the Immigration Court who have hearings within this six (6) month period. Additionally, my office staff, which consists of a newly of a newly graduated associate who is not yet admitted, one student intern, and three (3) paralegals, who would have to be laid off without pay during this period. Moreover,

I would still be responsible to pay for the office overhead which includes rent, internet, and leased equipment without any other source of income or revenue.

Otherwise, I would be required to serve the six (6) month suspension before judicial review of the BIA Decision could be completed. Once served the suspension is served, no relief which the Court could grant would restore those days of practicing law to the Plaintiff. The Court should not allow Plaintiff's meritorious challenge to BIA Decision to be rendered largely moot in this way until a final disposition on the merits in the above entitled action.

As outlined above, I have no other adequate remedy at law.

WHERRFORE, I respectfully request that the Court the within relief as well as such other and further relief that may be just and proper.


Dated January 31, 2024.

RONALD SALOMON
305 Broadway, Suite 1102
New York, NY 10007
212-791-0890
Ronsalomon412@gmail.com